This is a slander of title suit instituted by Miss Irene F. Barrow, Mrs. Hallette Barrow, wife of Dr. C.G. Cole, Mrs. Jennie Barrow, wife of Dr. Harris P. Dawson, Mrs. Clara Slatter, widow of Wilson J. Gaidry and Mrs. Annis Slatter, wife of Smith Hickman, who claim to be the owners in indivision, in the proportions set out in their petition, of certain property situated below Houma in the Parish of Terrebonne described, according to government surveys, as being Lots 1, 2, 3 and 4 of Sec. 78, T. 18, S.R. 18 E., containing 106.78 acres. They allege that they are in possession of the property described and that the defendant, Jean Baptiste LeBlanc, is slandering their title by claiming to be the owner and by having caused to be placed on the conveyance records of the parish, a map of his property made by one Guy J. Seghers, in May, 1937, on which their said property is included.
Following the procedure outlined in an action of this kind the plaintiffs pray for judgment against the defendant ordering him either to disclaim title to the property or else assert his own title or such rights as he may have to the property, within a certain time or else that there be judgment decreeing them to be the owners thereof.
In his answer the defendant denies the ownership and possession set out by the plaintiffs, admits the slander by claiming himself to be the title owner and also claiming ownership by title and possession of 1, 5, 10 and 30 years.
[1, 2] By the nature of the answer filed by the defendant in which he asserts his title to the property, the action has been changed from one of a slander of title to one that is petitory in its nature, and having declared his title as in a petitory action, the defendant assumed the burden of sustaining the same. He has become, as it were, the real plaintiff in the suit and the real plaintiffs stand in the position of a defendant in a petitory action. Under the well known and well recognized doctrine in such an action, the plaintiff can only recover on the strength of his own title and cannot stand on the weakness of his adversary's. See Goertz v. Menard, La. App., 168 So. 747.
The issues were thus presented in the district court and on the documentary evidence and the testimony adduced, especially that relating to the possession on which the defendant relies, the trial judge rendered judgment in favor of the plaintiffs recognizing them to be the owners of the property. The defendant has taken this appeal. Plaintiffs have filed a plea of 10 and 30 years prescription in this court.
By the documentary proof offered it is shown that these four lots were patented by the State of Louisiana to R.R. Barrow, an ancestor of the plaintiffs, on September 21, 1857, and as far as the record title is concerned it seems to us to be clearly in the name of the plaintiffs in this suit as the decedents and heirs of the patentee. The claim of title made by the defendant is by his purchase from an immediate ancestor of these plaintiffs, Robert R. Barrow, on April 14, 1890, of the land situated immediately in front of the property in controversy and fronting on Bayou Grand Caillou. The description as given in the title at the time of his acquisition is ten arpents and sixty feet front on the bayou "by the depth of survey." He purchased additional acreage fronting on Bayou Grand Caillou from other parties but in each sale the depth is again referred to as being "by depth of survey." The claim made by him is that the phrase "by depth of survey", as generally used, means up to the 40 arpent line from the front or from the bayou and that if the rear line is extended back 40 arpents from the bayou the four lots described as being in Sec. 78 are included within that area and therefore the property is included within the bounds of his title.
The testimony taken is rather voluminous and most of it relates to possession. We believe that in the final analysis defendant would have to rely on his plea of prescription, with possession, if he is to succeed in the case, and viewed from the standpoint of the possession shown, not only do we think that his case is weak *Page 471 
but the testimony strongly preponderates in favor of the plaintiffs.
[3] But we will discuss further the question of title as asserted by the respective parties. It is conceded by the defendant that these four lots were patented by R.R. Barrow from the State in the year 1857 and there is no record to indicate that any transfer was ever made by him or anyone else of this property, described as being these governmental subdivisions known as Lots 1, 2, 3 and 4 of Sec. 78. On the other hand there is considerable doubt whether the description of the property acquired by the defendant and which conveys the property he bought to "the depth of survey" means, in this case, that it extended 40 arpents from Bayou Grand Caillou.
A good reason for which we do not believe this appears from the fact that all the land which he bought was included in what is known as the Talbo grant or concession and, according to the maps and records offered in evidence and to the statement of the trial judge who is familiar with it, it appears that the Talbo grant did not extend 40 arpents in depth from the bayou on account of the meanderings of Bayou Grand Caillou at this point. When the expression was used in the transfer of the property in the neighborhood and particularly in that concession that it ran to "the depth of survey" we believe that it meant that it ran to the depth of survey of the Talbo concession as made by the government. That seems to us to be borne out by the fact that as far back as September, 1923, the defendant himself entered into an agreement with his neighbor Joseph A. Waguespack to the south by which they established and adopted the line separating their respective properties. This agreement was executed in notarial form and placed of record and it shows that in establishing that line it only extended as far back as the rear of the Talbo concession.
With all of these facts relating to titles therefore we are convinced that the title offered by the defendant is far from being in any way a stronger title and certainly that of the plaintiffs is by no means a weaker title than his.
[4] If he has to rely on his prescriptive title, under possession, defendant is in no better position because whatever possession he has shown is so weak in comparrison to that shown by the plaintiffs we hold that the district judge was absolutely correct in ruling in their favor.
We have serious doubt that the defendant ever did take possession of property under his title as far back as 40 arpents from the bayou. There is some testimony regarding a line and also about a ditch or a canal, and also some testimony to the effect that his property extended as far back as the open prairie or marshland which was recognized as being at that time open government land, but all the testimony on this point appears to be of a very weak character. The same may be said about testimony relating to his having cut timber in the rear of his property with which he built his house. It may be that he cut timber in the rear of the land which he acquired but if he ever intended to claim possession as far back as the land in controversy he certainly allowed adverse claims of possession which undoubtedly interrupted any possession he may have ever had.
Against whatever acts of possession the defendant claims to have exercised, the record shows that in 1924 the plaintiffs sold to A.W. Pettigrew, Inc. the timber situated on the property in controversy, which sale was put of record without any protest or question on his part; that in considering the means by which he would remove the timber from the property, Mr. Pettigrew found it necessary to obtain a right of way from the defendant to go over his land and accordingly he took the matter up with the defendant himself who agreed to and did give him a right of way for and in consideration of the price and sum of $75. He thereafter cleared a ditch or canal on defendant's property through which he removed the timber from the swamp.
Defendant admits having received this consideration and tries to explain it in a manner which is by no means satisfactory. But not only that, Mr. Pettigrew being uncertain as to where the line was between defendant's property and the property he *Page 472 
was to conduct his timber operations on, asked the defendant to point it out to him, whereupon the defendant referred him to his son Edward LeBlanc who went with Mr. Pettigrew in the swamp and showed him the line which was marked by a concrete block and followed clear across the property marked by three hacks to the tree. The defendant denies this rather meekly but the trial judge gave full credence to Mr. Pettigrew's testimony and we certainly find no reason for not following him on this issue of fact.
On another point regarding possession there is considerable testimony in the record relating to the trapping privileges granted on the land in controversy. Defendant claims that he leased the land to various parties for trapping and claims that that supported the possession he sets out but when we examine this question we find that back in 1931 and 1932 the land was being leased by R.R. Barrow, Jr. to other parties who testified that they trapped it, some of them saying that they were shown the line by Edward LeBlanc, the defendant's son. Notations of these trapping privileges and the amounts paid to Barrow are shown by a record which he kept of these transactions and tracing through that record we come to the trapping season of 1932-33 when we find that Edward LeBlanc himself leased it from Barrow for that season and paid him $50 for the privilege.
In addition to this there are records of oil and mineral leases granted by plaintiffs at different times and as late as 1942 and 1943 a grant of a right of way over the land to United Gas Line Company.
Other acts relating to possession might be referred to but we believe those mentioned are sufficient to disprove any such claims as are presented by the defendant. The record convinces us that not only has he failed to show as strong a recorded title as have the plaintiffs but that he has also failed to show any title by prescription such as he relies on.
The judgment appealed from which recognized the plaintiffs as owners of the property and ordered the Clerk of Court, ex-officio Recorder of Conveyances of the Parish of Terrebonne to make proper correction of the Conveyance Records of that Parish to show that defendant has no claim thereto is found to be correct and for the reasons herein stated it is affirmed at the costs of the defendant, appellant herein.
ELLIS, J. absent; J. CLEVELAND FRUGE, acting as Judge ad hoc.